DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} This case concerns the legal custody of three minor children following an adjudication by the juvenile court that they were dependent and neglected. The children had witnessed repeated incidents of domestic violence in their mother's home. These incidents had resulted in serious injury to their mother on more than one occasion. Although the juvenile court initially allowed the children to remain in their mother's home under an order of protective supervision, the violence in the home continued. The children were removed from their mother's custody and placed in the temporary custody of their maternal *Page 2 
grandmother. Lorain County Children Services eventually moved the court to place the children in the grandmother's legal custody, and the trial court granted that motion. The central issue on appeal is whether it was in the children's best interests to be placed in the legal custody of their maternal grandmother rather than their mother. Upon consideration, this Court concludes that the trial court properly found that legal custody to the grandmother was in the children's best interests.
 I. {¶ 2} Dawn Trozzo is the mother of M.G., born June 30, 1997, M.G., born March 6, 1999, and C.J., born January 26, 2004. The fathers of the children were not actively involved in the juvenile court and are not parties to this appeal. Lorain County Children Services filed a complaint on May 18, 2005, alleging that M.G., M.G., and C.J. were neglected and dependent children. The juvenile court initially allowed the children to remain in Ms. Trozzo's home under an order of protective supervision to Children Services. Children Services later moved for a change of disposition, however, because it had received reports that domestic violence was continuing in the home in the presence of the children. The agency further alleged that Ms. Trozzo continued to be in denial about the violence and was not participating in any counseling. The juvenile court ordered that the children be removed from the home and placed with their maternal grandmother, *Page 3 
who already had custody of Trozzo's two oldest children pursuant to a voluntary placement by Ms. Trozzo.
 {¶ 3} Ms. Trozzo has been the victim of domestic violence for many years and her children have been repeatedly exposed to the violence. According to the Children Services' caseworker, the agency has been involved with Ms. Trozzo and her children "forever." Although the record indicates that there have been several prior dependency and neglect cases involving this family, no details about those cases are included in the record. It is clear, however, that Ms. Trozzo has suffered serious harm due to her violent relationships and that she has been unable to protect herself from the physical harm and her children from the emotional harm caused by living in an atmosphere of ongoing violence. Ending the cycle of violence in Ms. Trozzo's home was the primary goal of the case plan.
 {¶ 4} The juvenile court adjudicated the children neglected and dependent children. After over a year working toward a goal of reunification of the family, Children Services did not believe that Ms. Trozzo had resolved the domestic violence issues in her home. The agency did believe that the children were doing well in the home of their maternal grandmother and that she could provide a suitable permanent placement for them. Ultimately, the court was faced with two dispositional motions: Ms. Trozzo's motion for legal custody of M.G., M.G., and C.J. and Children Services' motion to place the children in the legal custody of their maternal grandmother. Following a hearing, the magistrate found that it was *Page 4 
in the children's best interests to remain in the home of their maternal grandmother and, therefore, the court placed them in her legal custody.
 {¶ 5} Ms. Trozzo timely filed objections to the magistrate's decision, asserting that it was against the manifest weight of the evidence. Specifically, she asserted that she had complied with the requirements of her case plan and, therefore, her children should have been returned to her custody.
 {¶ 6} The trial court overruled Ms. Trozzo's objections, adopted the magistrate's decision, and entered judgment placing the children in the legal custody of the maternal grandmother. Ms. Trozzo has appealed from the judgment and assigns one error for review.
 II. {¶ 7} Ms. Trozzo's sole assignment of error is that the trial court incorrectly placed the children in the legal custody of their maternal grandmother and that it should have instead placed them in her legal custody. Specifically, Ms. Trozzo has challenged the trial court's finding that she failed to complete all of the requirements of her case plan.
 {¶ 8} Although Ms. Trozzo has pointed to evidence that she had complied with some of the requirements of her case plan, there was ample evidence that she had not accomplished the primary goal of the case plan: to end the cycle of violence in her home. The Children Services caseworker, who had been working with the family for two years, testified that Ms. Trozzo had made no progress in *Page 5 
her ability to understand her tendency to involve herself in violent relationships and that her children are negatively impacted by that violence. The maternal grandmother testified that she had tried for years to get Ms. Trozzo into counseling but that she had refused to participate. The caseworker explained that, although Ms. Trozzo has repeatedly suffered serious physical injuries due to the violence in her relationships, she denied for a long time that her injuries had resulted from domestic violence.
 {¶ 9} Ms. Trozzo eventually began counseling, but the caseworker did not believe that Ms. Trozzo took the counseling seriously or that she had begun to understand the impact of the violence on her family. Moreover, it appeared that her counseling sessions may not have been properly focused on domestic violence because her counselor testified that he believed that Ms. Trozzo had started counseling due to anger management issues, not because she was the victim of domestic violence.
 {¶ 10} More significantly, there was evidence that Ms. Trozzo had continued to maintain her relationship with the father of C.J., the perpetrator of the violence. Several witnesses testified that Ms. Trozzo and her abusive boyfriend had been in continual contact, both in person and on the telephone, throughout the reunification period. As the caseworker explained, Ms. Trozzo did not seem to internalize anything that she had learned through counseling. Several witnesses, including Ms. Trozzo's counselor, indicated that they had serious concerns about *Page 6 
recurring violence in the home if Ms. Trozzo was maintaining a relationship with her abuser.
 {¶ 11} Moreover, Ms. Trozzo's compliance with the case plan may have been relevant to the trial court's determination of what disposition was in the children's best interests, but it was not dispositive. See, e.g.,In re A.A., 9th Dist. No. 22196, 2004-Ohio-5955, at ¶ 9. Although the trial court's disposition of legal custody is not guided by clear statutory requirements, Ohio courts agree, and the parties do not dispute, that the trial court must base its decision on the best interest of the children. In re N.P., 9th Dist. No. 21707,2004-Ohio-110, at ¶ 23, citing In re Fulton, 12th Dist. No. CA2002-09-236, 2003-Ohio-5984, at ¶ 11. The trial court's best interest determination necessarily focused on whether Ms. Trozzo or the maternal grandmother could provide an appropriate home for these children.
 {¶ 12} The evidence demonstrated that Ms. Trozzo was not in a position to provide a suitable home for the children. The children had been exposed to repeated incidents of domestic violence in her home and there was no reason to believe that the environment had changed. The children had felt unsafe in their mother's home, they feared for her safety, and their behavior had been negatively impacted by their continual exposure to violence. While the children were living in Ms. Trozzo's home, the two older children frequently displayed angry outbursts at school. The oldest child had attempted to strangle another student. Ms. Trozzo *Page 7 
had arranged for the oldest child to start counseling, but his case was closed because Ms. Trozzo never met with the counselor.
 {¶ 13} After the children were placed with their grandmother, she assured that the two older children regularly participated in counseling. A counselor came to their home each week and worked with the children on appropriate ways to manage their emotions. The counselor explained that, after working with the children regularly for several months, each child's behavior was improving. The children were starting to communicate their feelings rather than reacting physically to their emotions. The counselor and the grandmother planned to continue the counseling on a regular basis.
 {¶ 14} The guardian ad litem testified that she met with all three children and, although the youngest child did not indicate where he would like to live, the two older children had expressed fear of their mother and her home and told the guardian that they want to stay in their grandmother's home. The guardian ad litem recommended that the three children be placed in the legal custody of their maternal grandmother because such a placement would be in their best interests. The children had been doing well in her home and felt safe there. The guardian expressed serious concerns about the safety of the children if returned to Ms. Trozzo's home because Ms. Trozzo had failed to resolve her domestic violence issues. *Page 8 
 {¶ 15} The trial court had ample evidence before it from which it could conclude that it was in the best interests of M.G., M.G., and C.J. to be placed in the legal custody of their maternal grandmother and not in their mother's legal custody. Ms. Trozzo's assignment of error is overruled.
 III. {¶ 16} The assignment of error is overruled and the judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 9 
Costs taxed to appellant.
 SLABY, P. J. CARR, J. CONCUR *Page 1